IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**RUSSELL ALLEN KNIGHT, SR.,**
        **Petitioner,**


**v.**                                              **Case  No.   1:05cv89/MP/MD**


**JAMES MCDONOUGH,[1]**
        **Respondent.**

_____


**ORDER and**
**REPORT AND RECOMMENDATION**

        **Before the court is a petition for writ of habeas corpus filed pursuant to 28
U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 9), including relevant
portions of the state court record.  Petitioner has replied (doc. 17).  The matter is
referred to the undersigned magistrate judge for report and recommendation
pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration
of all issues raised by petitioner, it is the opinion of the undersigned that no
evidentiary hearing is required for the disposition of this matter, Rules Governing
Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the
pleadings and attachments before the court show that petitioner is not entitled to
relief, and that the petition is without merit and should be denied.**

---

        **[1]James McDonough succeeded James Crosby as Secretary of the Florida Department of
Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).**

## BACKGROUND and PROCEDURAL HISTORY[2]

During the night of December 7 - 8, 1997 petitioner entered the bedroom of his then thirteen year old daughter, S. K., removed her panties, and penetrated her vagina with his penis, something he had been doing for about a year.  At about the same time, defendant's twelve year old son, T. K. (S. K.'s brother) got up to go to the bathroom.  He was in the hall and saw his father, the petitioner, standing by his sister's bed and "fixing his pants."  (Doc. 9, ex. B, p. 52).[3]  S. K. was crying.  The next day S. K. told T. K. what had happened.  She told her mother about the incident a few days later, and her mother reported the matter to law enforcement.  Police officers interviewed S. K and T. K., who gave consistent stories.  They then interviewed the petitioner, and after having been given his *Miranda* rights, he confessed.

Petitioner was charged in the Circuit Court of Levy County, Florida in a one count information with sexual battery upon a child  twelve years of age or older, but less than eighteen years of age, while in a position of familial authority (ex. A, p. 9).  He was tried before a jury and found guilty.  He was sentenced to 136.75 months imprisonment (11 years, 4.75 months), which was at the top of the guideline range of 82.05 to 136.75 months.  He appealed his conviction and sentence unsuccessfully (ex. C), and then filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850.    The  trial  court  held  an  evidentiary  hearing  at  which  petitioner  was represented by appointed counsel.  At the conclusion of the hearing the court ruled from the bench, finding that petitioner's allegations were "without merit" (ex. E, p. 29), and entered a written order denying the motion, but without explaining its reasoning (ex. D, p. 147).  Appointed counsel filed a notice appealing the denial of the  motion  for  post-conviction  relief,  but  later  filed  an  *Anders*[4]  brief  (ex. F).

---

[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  See Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where there are conflicting inferences and disputes exist, this court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).

[3]Hereafter all references to exhibits will be to those provided at Doc. 9 unless otherwise noted.

[4]*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Petitioner then filed a *pro se* brief (ex. G), and the appellate court affirmed without written opinion (ex. H).  The issues raised here are the same as those raised in petitioner's motion for post-conviction relief.

Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued.  *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court

"decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner seeks federal habeas relief based on five grounds.  In his federal petition he simply attached a copy of his Fla. R. Crim. P. 3.850 motion, so everything presented here was directly presented to the trial court.  In his first ground he contends that he is entitled to a new trial based on newly discovered evidence.  He also advances four grounds based on ineffective assistance of counsel.

    1.   <u>Ground One - Newly Discovered Evidence.</u>

For his first ground petitioner contends that he is entitled to federal habeas relief because he has newly discovered evidence, the use of which would lead to an acquittal.  The precise nature of this "new" evidence is not totally clear, but it appears that petitioner was tried in another county for the same offense against his daughter (although the assault occurred prior in time to this one, and the trial occurred after this one), and at that trial S. K. testified that when she was sexually assaulted in December 1997 she was eleven or twelve, not thirteen.  This, petitioner argues, goes to her credibility, and supports a claim that he was convicted of a crime that occurred outside the time contained in the information.

Respondent contests this ground.  First, he says that although the issue was presented to the state court, it was not presented as a federal constitutional issue, and is therefore not reviewable in this court.  Respondent is correct.  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5]

---

[5]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)   the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)   there is an absence of available State corrective process; or

      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State

thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).   To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that

---

to raise, by any available procedure, the question presented.

properly explain state law." *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  Very recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds,

---

[6]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.

Prior to *Duncan*, the Eleventh Circuit broadly interpreted the "fair presentation" requirement.  *See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to

federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not fairly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

In his motion for post-conviction relief petitioner argued Florida law as his basis for relief (ex. D, pp. 6-11). He cited to numerous Florida decisions in support of his argument, and mentioned only one federal case, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but only in reference to a Florida decision that allowed a new trial after a *Brady* violation by the state. Petitioner did not argue a *Brady* violation here, since he does not claim that the state knew *at the time of the trial involved here* that S.K. would testify as she did during the subsequent Citrus County trial. Moreover, petitioner's Rule 3.850 motion mentioned no federal constitutional violation of any kind. As petitioner did not fairly present a federal constitutional claim to the state court, and he is procedurally barred from returning to do so now, he is not entitled to review of his claim by this court, unless he establishes either cause and prejudice or a sufficient showing under *Schlup*. Petitioner has done neither.

Petitioner does not allege that an external impediment prevented him from presenting the federal constitutional nature of his claim to the state court when he had the opportunity to do so. Thus, he cannot meet the cause and prejudice standard to overcome his default. To the extent he attempts to meet the miscarriage of justice exception by relying on the alleged "newly discovered evidence" of S.K.'s subsequent trial testimony, he falls far short of making the showing required by *Schlup*.

Petitioner says he was charged in Levy County with assaulting S. K. when she was twelve to seventeen years old, but that according to the newly discovered evidence, she was less than twelve.  The foundation of petitioner's claim is that during the Levy County trial S. K. testified that she was thirteen in December 1997 when petitioner assaulted her, but when she later testified during a Citrus County trial she said she was eleven or twelve in December 1997.  Petitioner has misrepresented the facts.  He attached to his motion for post-conviction relief a single page from the Citrus County trial.  There, the state asked S. K. to focus on the period from June 1, 1997 until August 10, 1997, and then asked her when petitioner *first* sexually assaulted her.  She responded, "I think I was 11 or 12, I'm not sure." (Ex. D, Attach. at ex. A).  She then testified that the first assault happened in the woods at her grandfather's house in Dunnellon, Florida (part of which is in Citrus County).[7]  It is clear that at the two trials, S. K. was testifying about different instances of sexual assault that occurred in different places.  Furthermore, the jury at the Levy County trial was told S. K.'s age without objection.  She was thirteen when she was assaulted in Levy County (ex. B, p. 39).  She apparently (according to the date of birth recorded on the incident report) had just turned thirteen in the summer of 1997 when she was assaulted in Citrus County (ex. A, p. 1).[8]  Her Citrus County testimony was given approximately a year after her Levy County testimony. At her then age, it is not surprising that her dates may have been slightly off.  But this single, out of context, equivocal statement by S.K. at the Citrus County trial does not present a colorable claim to this court that S.K.'s testimony at the Levy County trial was untruthful or that she was <u>not</u> thirteen when petitioner assaulted her in December of 1997.

---

[7] Records of the Florida Department of Corrections show that petitioner was convicted in Citrus County of two counts of sexual battery on a child by an adult.  His date of sentencing is shown as August 26, 1999, and he was sentenced to 27 years, 3 months, 18 days. http://www.dc.state.fl.us/ActiveInmates/detail.asp?Bookmark=1&From=list&SessionID=1029292619.

[8] The incident report gives S.K.'s date of birth, which is not repeated here for reasons of confidentiality.

Even if the court were to review petitioner's "newly discovered evidence" claim on the merits, he would not be entitled to federal habeas relief. Assuming the court accepted petitioner's contention that S. K. was less than twelve at the time of the Levy County assault, and therefore that she was outside the ages mentioned in the information, petitioner cannot meet the first part of any claim for newly discovered evidence - that the evidence was unavailable during the Levy County trial. *Kokal v. State*, 901 So.2d 766 (Fla. 2005). Petitioner is S. K.'s father. This court does not accept an argument which is ultimately founded on petitioner's claim that during the Levy County trial he did not know his own daughter's age or that such information was unavailable to him. Petitioner is not entitled to federal habeas relief on this claim, and the writ should not issue.

    2.   <u>Ground Two - Ineffective assistance of counsel.</u>

Petitioner next asserts four separate grounds of ineffective assistance of counsel. In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's

performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

A.  <u>Ineffective assistance of counsel - failure to object to confession.</u>

Petitioner says defense counsel "knew or should have known" that the state was going to play a tape of petitioner's confession (doc. 1, p. 12), and should have

moved to suppress it.  Petitioner's proposed ground for suppression is that "the audio tape had been tampered with by the arresting officer/family member (officer placing hand over microphone when Defendant KNIGHT was stating that he was just repeating what he was told to say)."  (*Id.*).  According to petitioner, because counsel failed to investigate this ground, the evidence against petitioner was overwhelming. This claim was presented to the state court, and respondent concedes that the issue was properly exhausted (doc. 9, p. 14).

   **Federal review of state court decision.**

   The state court did not cite or refer to *Strickland*, but it did hold specifically that petitioner had failed to show that his counsel was ineffective.  The court did not give a particular reason for its finding.  Nevertheless, the state court's decision was well founded. The thrust of petitioner's claim is that counsel failed to investigate the alleged tampering, so he did not move to suppress the confession.  However, nowhere in his pleadings does petitioner ever state unequivocally that he told counsel that the tampering had occurred.  He refers to the tampering as a "fact," but does not say that the "fact" was known to his attorney (doc. 1, p. 12).  At the evidentiary hearing on petitioner's motion for post-conviction relief, when the court asked him if he had ever told his attorney about the tampering, he responded "My attorney, I didn't tell my attorney anything."  (Ex. E, p. 5).  When pressed, he changed his story, and told the court he had informed his attorney of the tampering, and asked him to file a motion to suppress (ex. E, p. 6). Defense counsel testified at the hearing that petitioner never told him of any alleged tampering, only that he had confessed because the officer kept accusing him of the crime and he was tired (ex. E, pp. 14-15).[9]

_____

   [9]Interestingly, the prosecutor raised the issue indirectly before trial began.  She asked the court for an advisory ruling that the confession would be admissible, indicating that she wanted to mention it during opening statement.  Defense counsel did not object, but said he felt the issue was premature.  The court allowed a proffer, which consisted of the testimony of Officer Billups, the arresting officer.  Officer Billups testified in essence (*see* ex. B, pp. 6-19) that he interviewed S. K and her brother, and then arrested petitioner and took him to the police station. Petitioner's *Miranda* rights were explained, and he signed a waiver form.  He admitted that he had inserted his penis into his daughter's vagina.  Defense counsel cross-examined, questioning the officer's ability to remember that petitioner was sober and aware.  He then objected to the nature of the proceeding as asking for an advisory opinion.  The court held that the evidence established that the confession was voluntary

Clearly this comes down to a credibility issue.  This court was not present at the hearing, but the state court specifically held that petitioner's claim was without merit.  This could have been based only on a credibility finding, since there was no evidence either to corroborate petitioner's version or to negate it.  Since the court believed counsel's testimony that he was not told of any alleged tampering, it made a factual finding that this court will not second-guess.  The state court did not "unreasonably appl[y] the relevant Supreme Court authority," *Williams, supra*, and the writ should not issue.

   B.   <u>Ineffective assistance of counsel - failure to object to prosecutor crying.</u>

   Petitioner next faults his attorney for not objecting when the prosecutor cried in front of the jury.  The prosecutor was examining T. K. when the following occurred:

| | |
|---|---|
| Q: | Did you hear anything? |
| A: | My sister crying. |
| Q: | You got scared and went to your room you say? |
| A: | Uh-huh. |
| | MS. CELLON (prosecutor):      Excuse me, Judge. |
| | THE COURT:   Do you need a break, Ms. Cellon? |
| | MS. CELLON:  No, sir, I'm going to try to - - |
| | THE COURT:   Okay. |
| Q: | (Ms. Cellon continues)   Did you say anything to your sister the next day about what you saw? |
| A: | I asked her if anything happened and she just - - |
| | MR. NUGENT (defense counsel):  I'm  going to object on hearsay. |
| | MS. CELLON:  Judge, maybe I do need a break. |
| | THE COURT:   All right.  Let's take a ten-minute recess. |
| | MS. CELLON:  I'm sorry. |
| | THE COURT:   That's quite all right. |

---

after appropriate warnings, and that if the proper predicate were laid, it could be used at trial (ex. B, p. 20).

   During the trial Officer Billups identified the *Miranda* warning form (which was not introduced in evidence) (ex. B, pp. 84), and confirmed that petitioner confessed to having placed his penis in his daughter S. K.'s vagina twice on the night in question (ex. B, pp. 90-92).  Defense counsel cross-examined generally on the length of the investigation and interrogation, but said nothing about any part of the tape being subjected to tampering, or about the officer placing his hand over the microphone (ex. B, pp. 92-100).

* * *

> Q:        (Ms. Cellon continues)Tony, I think I left off, before I got strangled, with did you tell your sister the next morning what you'd seen?

(Ex. B, pp. 58-59).  Counsel should not employ tactics aimed at appealing to the jury's sympathy, and where such conduct on the part of the prosecutor is so pervasive as to deny a defendant a fair trial, a conviction can be set aside.  *Izquierdo v. State*, 724 So.2d  124 (Fla. 3rd DCA 1998).  Petitioner contends that the prosecutor cried during her examination of T. K., as allegedly shown by the foregoing excerpt from the record, and that his counsel was ineffective in failing to object.  Petitioner testified at the evidentiary hearing that the prosecutor was crying, with tears streaming down her face.  Defense counsel testified that he had tried probably seventy-five trials against the prosecutor, and that she had "never cried ever at a trial."  (ex. E, p. 18).  He further testified that according to his recollection of the event the prosecutor was coughing, got some water, but then started coughing again and asked for a recess.  There could have been tears on her face from coughing so hard, but she was not crying (ex. E, pp. 19-20).

The state court made the same finding on this claim as it did on the others - that it was without merit, and counsel was not ineffective (Ex. d, p. 147).  Again, the state court's decision is well supported.  This issue is another credibility matter, and the state court disbelieved the petitioner.  Moreover, the prosecutor's remark that she had gotten "strangled" sounds more of coughing than of crying.  Petitioner protests, saying that there were all manner of witnesses who could have come forward to describe the prosecutor's crying, and that the court should not have relied solely on the testimony of defense counsel.  Petitioner forgets his burden, however.  He was represented by counsel at the hearing, and it was his and his counsel's job to produce witnesses, not the court's.

There is another reason for disbelieving the petitioner.  When the prosecutor asked for a recess she apologized to the court, which responded that it was "quite all right."  (Ex. B, p. 59).  Any trial court is aware of the well-established rule against

counsel for either party pandering to the jury.  In Florida such behavior may be grounds for reversal.  *Izquierdo, supra.*  Had the event unfolded as petitioner claims, the court surely would not have told her it was "quite all right" to have been crying in front of the jury.  Moreover, the witness on the stand at the time was the victim's brother, not the victim, and the matter being discussed was what he saw, not what the victim experienced.  It is illogical to believe that the prosecutor would have cried during this matter-of-fact part of the trial, but not when the victim testified.  Petitioner has not shown that his counsel was ineffective.   The state court did not "unreasonably appl[y] the relevant Supreme Court authority," *Williams, supra*, and the writ should not issue.

       C.   <u>Ineffective assistance of counsel - failure to cross-examine witness.</u>

       The victim's brother, T. K., testified in limited fashion to what little he saw on the night in question.  Counsel did not cross-examine.  Petitioner faults him for this failure, saying that at the very least T. K. could have been tripped up on the time of the incident.  T. K. testified during a deposition that he got up to go to the bathroom at 1 to 2 in the morning.  At trial he testified that he did not remember "a specific time" when he got up (ex. B, p. 57).  Petitioner says this is important, because if the incident happened after midnight, it was outside the time alleged in the information, and because it proved that the boy was untruthful.

       At the evidentiary hearing counsel testified that he did not cross-examine T. K. for strategic reasons - the witness had nothing to offer that would benefit the defense, and nothing would be gained by revisiting what the boy had seen (ex, E, p. 16).  As before, the state court held that petitioner's claim was without merit.

       <u>Federal review of state court decision.</u>

       Counsel plainly testified that he made a strategic decision not to cross-examine T. K.  Petitioner's complaint centers on his belief that the boy's testimony concerning the time of the event is important.  It is unimportant for two reasons.  First, when a witness says that something happened at around 1 or 2 in the morning, and later says he cannot give a "specific" time, any inconsistency is more imagined than real.  Second, whether the assault occurred before or after midnight on the

night of December 7-8, 1997 is irrelevant.  The information alleged that the assault occurred "on or about" December 7.  An information need only "contain allegations stating as definitely as possible the time and place of the commission of the offense . . . ."  Fla. R. Crim. P. 3.140(d)(3); *Baxter v. Stack*, 270 So.2d  419 (Fla. 4th DCA 1972) (holding that an information alleging that a crime occurred "on or about" a certain date is sufficient under Rule 3.140(d)(3).  T. K.'s testimony was consistent with the charge.  The state court did not "unreasonably appl[y] the relevant Supreme Court authority," *Williams, supra*.  Petitioner's claim is without merit and the writ should not issue.

     D.  <u>Ineffective assistance of counsel - Failure to challenge hearsay testimony</u>

     Petitioner next contends that his attorney was ineffective in allowing witnesses to testify about his confession, and in allowing a medical witness to use hand gestures to simulate vaginal penetration, all without objection.  The state court found these claims to be without merit.

     <u>Federal review of state court decision.</u>

     Petitioner's claim on the confession is at odds with itself.  He complains that his attorney failed to object to the hearsay confession and thereby failed to preserve it for appeal.  He then says that his attorney <u>did</u> object to the hearsay testimony, but failed to <u>properly</u> preserve it for appeal (doc. 1, p. 19).  He does not explain what he means by this.  Petitioner admits, and the record confirms, that counsel objected.  Petitioner does not explain what more was required.  Moreover, a confession is not inadmissible hearsay.  It is hearsay in the sense that it is an out-of-court declaration, but it is admissible as an exception to the hearsay rule because it constitutes an admission by a party.  Fla. Stat. §  90.803(18) (providing an exception to the hearsay rule for a statement offered against a party that is the party's own statement).

     As to the alleged use of hand gestures by the medical witness, this issue was addressed at the evidentiary hearing.  Defense counsel testified adamantly that he saw no such hand gestures, and that if he had, he would have "jumped up screaming." (Ex. E, p. 19).  The state court obviously accepted this testimony, again based on a credibility finding.  Moreover, the record shows that the witness testified

that the results of the medical examination were inconclusive, so there was nothing objectionable about her testimony.  Petitioner argues that the Rule 3.850 court should have called a disinterested witness who could have verified that the hand gestures were made, but as noted above, that was not the court's job, it was petitioner's.

Neither of petitioner's claims based on failure to object or to preserve objectionable testimony for appeal has merit.  The state court did not "unreasonably appl[y] the relevant Supreme Court authority," *Williams, supra*, and the writ should not issue.

CONCLUSION

Petitioner has presented this court with a number of scattershot, frivolous claims in an attempt to blame his lawyer for his conviction and punishment for his criminal behavior.  The court has seen some cases in which counsel's performance was not particularly sterling, but still met the *Strickland* standard for effectiveness. In this case, counsel's performance, considering the strength of the state's case, was indeed sterling.  Petitioner is not entitled to federal habeas relief.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that James McDonough has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in the case *of State of Florida v. Russell Knight*, in the Circuit Court of Levy County, Florida, case no. 97-829, be DENIED, and that this cause be DISMISSED and the clerk be directed to close the file.

At Pensacola, Florida this 22nd day of February, 2006.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**